UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAIGE STEMM, Individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 1:18-cv-2289 |
| Plaintiff, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| TOOTSIE ROLL INDUSTRIES, INC., | ) ) ) | CLASS ACTION |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff Paige Stemm, individually and on behalf of all others similarly situated, alleges the following facts and claims upon personal knowledge, investigation of counsel, and information and belief against Tootsie Roll Industries, Inc. ("Tootsie Roll" or "Defendant").

## NATURE OF THE CASE

1. "Informed consumers are essential to the fair and efficient functioning of a free market economy. Packages . . . should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." 15 U.S.C.A. § 1451.

2. The average consumer spends a mere 13 seconds making an in-store purchasing decision.[1] That decision is heavily dependent on a product's packaging, and particularly the package dimensions: "Faced with a large box and a smaller box, both with the same amount of

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-windown.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

1

product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]

3. Plaintiff brings this class-action lawsuit based on Defendant's misleading, deceptive and unlawful conduct in packaging its Junior Mints candy in opaque cardboard containers, which have the following dimensions: 5-1/2" x 3/4" x 3-1/4" ("Products"). The Products are uniformly under-filled or "slack-filled." Specifically, approximately 56% of the Junior Mints container is filled with candy, and the remaining 44% of the container is empty. As more fully described herein, the slack-fill in the Products is non-functional, and therefore misleading and unlawful.

4. Accordingly, Plaintiff brings this case for declaratory and equitable relief and to recover damages on behalf of an Illinois Class for Defendant's false, deceptive, unfair, and misleading packaging of the Products, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann. 505/2.

5. Plaintiff also brings this action on behalf of herself and all others similarly situated to recover damages and injunctive relief for Defendant's false, deceptive, and misleading conduct, and for disgorgement of Defendant's unjust enrichment.

**PARTIES**

6. Plaintiff Paige Stemm is an Illinois citizen and resident of Belleville, Illinois. In or around early March 2018, Plaintiff purchased a Junior Mints Product at a Walgreens store in Belleville, Illinois, for personal, family, or household purposes. The purchase price of the Product

---

[2] http://www.consumerreports.org/cro/magazine-archive/2010/january/shopping/product-packaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers).

2

was approximately $1.00. Plaintiff's claim is typical of all Class Members in this regard. In addition, the non-functional slack-fill contained in the Product purchased by Plaintiff is typical of the slack-fill contained in the Products purchased by Class Members.

7. Defendant Tootsie Roll Industries, Inc. is a Virginia corporation with its corporate headquarters located at 7401 South Cicero Avenue, Chicago, Illinois. Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

## JURISDICTION AND VENUE

8. This is a class-action lawsuit seeking monetary damages and equitable relief pursuant to Federal Rule of Civil Procedure 23.

9. This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act in that damages exceed $5,000,000 in the aggregate, and the parties include citizens of different states. 28 U.S.C. § 1332(d)(2).

10. This Court has personal jurisdiction because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within Illinois through its sales of the Products to Illinois consumers.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of Illinois. In addition, Defendant is headquartered in Chicago, Illinois.

## ALLEGATIONS OF FACT

### Federal and Illinois State Law Prohibit Non-Functional Slack-Fill

12. Defendant's deceptive and misleading conduct, as described herein, violates the Federal Food, Drug and Cosmetic Act ("FDCA") Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 343(d)); and the Code of Federal Regulations Title 21 part 100, *et seq.*, as well as

parallel Illinois statutes. As described in detail below, these violations contravene the Illinois Consumer Fraud and Deceptive Business Practices Act, which prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 Ill. Comp. Stat. Ann. 505/2.

13. 21 C.F.R. § 100.100 prohibits nonfunctional slack-fill:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

14. In addition, pursuant to 21 C.F.R. § 100.100, a container is presumptively misleading if it does not allow the consumer to fully view its contents and if it contains non-functional slack-fill.

15. In adopting 21 C.F.R. 100.100, the United States Food and Drug Administration ("FDA") stated: "Congress determined . . . that packages that are only partly filled (containing slack-fill) create a false impression as to the quantity of food they contain." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993). "In fact, Congress stated in arriving at section 403(d) of the act that that section is 'intended to reach deceptive methods of filling where the package is only partly filled and, *despite the declaration of quantity of contents on the label*, creates the impression that it contains more food than it does.'" *Id*. at 64129 (internal citations omitted) (emphasis added).

16. Illinois state law also prohibits non-functional slack-fill and incorporates language identical to 21 U.S.C. § 343(d): "A food is misbranded . . . . (d) If its container is so made, formed or filled as to be misleading." 410 Ill. Comp. Stat. Ann. 620/11.

**Defendant's Products Contain Substantial Non-Functional Slack-Fill**

17. Defendant manufactures, markets, promotes, labels, advertises, and sells the Products at issue.

18. The Products are sold throughout the State of Illinois and nationwide, and are regularly sold at grocery stores, supermarkets, convenience stores, and other food retail outlets.

19. The Products are all packaged in non-transparent, cardboard containers, which contain substantial empty space.

20. The Products are small, ellipsoid-shaped candies, which Defendant describes as "creamy mints in pure chocolate."



21. The Products are uniformly packaged in opaque cardboard containers that have the following dimensions: 5-1/2" x 3/4" x 3-1/4."

22. The Products are also uniformly packaged with approximately 44% slack-fill. Because the containers are opaque, consumers, such as Plaintiff and Class Members, could not see the contents of the container at the time of purchase, including the substantial, non-functional slack-fill.



23. Defendant's misrepresentations and omissions are uniform because the Products are packaged in uniformly-sized containers, which have approximately 44% slack-fill.

**The Products' Slack-Fill Is Non-Functional**

24. The slack-fill in the Products is non-functional, and therefore unlawful, because it cannot be justified by any of the safe-harbor provisions contained in 21 C.F.R § 100.100(a).

**21 C.F.R § 100.100(a)(1) [Protection of the Contents of the Package]**

25. The slack-fill in the packaging of the Products does not protect the Product contents.

26. A classic example of slack-fill that is designed to protect the contents of a package is the empty space contained in bags of potato chips. The packages are filled with air to protect the fragile chips during shipment and in retail display.

27. By contrast, here, the substantial slack-fill may actually *increase* the risk of damaging the candy contained in the packaging. The more empty space there is in the Products' packaging, the more movement the Products will likely experience within the packaging, which increases the potential the candy pieces will be damaged.

28. Moreover, the rigid cardboard containers in which the Products are packaged provide significant protection to the candies.

**21 C.F.R § 100.100(a)(2) [Requirements of Machines Used for Enclosing the Contents]**

29. There is no machine requirement used for enclosing the Product contents that would justify the Products' substantial slack-fill.

30. The industry standard machines are capable of filling and enclosing the Products with far less slack-fill than the Products currently contain.

31. Similar candy products packaged and sold in similar cardboard containers have substantially less slack-fill than Defendant's Products.

32. In fact, Defendant has unequivocally demonstrated that it can increase the fill in the current Product containers. Defendant sells "Junior Mints XL" ("Junior Mints XL"). Junior Mints XL are sold in the *exact same size cardboard container* as the Products and contain identical Junior Mints candy as the Products. However, Junior Mints XL contain a significantly higher level of fill—that is, more Junior Mints candy—than the Products. Specifically, the Junior Mints XL products have an 18% higher fill than the Products.

33. Accordingly, the amount of slack-fill in the Products cannot be justified by the machines and equipment used to enclose the Products. Indeed, Defendant's Junior Mints XL products necessarily prove that at least a significant amount of the Products' slack-fill is non-functional and therefore misleading.

**21 C.F.R § 100.100(a)(3) [Unavoidable Product Settling During Shipping and Handling]**

34. Product "settling" accounts for approximately 1-2% of the slack-fill in the Products' packaging; thus, the substantial slack-fill is not due to unavoidable product settling.

35. Due to the candies' size, shape and consistency, when placed in the packaging, the candy pieces create minimal void patterns, and experience very little "settling."

**21 C.F.R § 100.100(a)(4) [Need for the Package to Perform a Specific Function]**

36. The Products' packaging does not "perform a specific function," such as playing a role in the "preparation or consumption" of the candies (for example, cereal that is sold in a bowl-shaped container to which a consumer adds milk and that necessarily requires empty space to accommodate that purpose).

37. Nor is any such function "clearly communicated to consumers." The Products' packaging and labeling are silent as to any function beyond merely holding the candies.

**21 C.F.R § 100.100(a)(5) [Reusable Container Where the Container Has Independent Value]**

38. The Products are not packaged in a container that is meant to be reused or otherwise used after the candies are consumed.

39. Nor is the packaging a "durable commemorative or promotional package."

40. In addition, the packaging does not have any value that is both significant in proportion to the value of the Products and independent of its function to hold the food.

41. Rather, the packaging is a cardboard container that is expected to be discarded after the candies are consumed, and a reasonable consumer does not attach any independent value, monetary or otherwise, to the Products' packaging.

**21 C.F.R § 100.100(a)(6) [Food Labeling and Packing Requirements]**

42. As described herein, the level of fill in the Product containers can certainly be increased.

43. Further, there is nothing unique or inherent to the small candy pieces (e.g., their shape, size, composition, etc.) that would prevent more of them from being placed in the packaging. Indeed, very similar candy products packaged in very similar packages—including Defendant's own Junior Mints XL product—contain substantially higher levels of fill than the Products.

44. There is also nothing unique or inherent to the candies that requires Defendant to package them in a specific packaging material, such as the cardboard containers at issue.

45. Nor is there an industry standard for packaging the Products in a container of a specific shape, size, or in one containing a specific number of candy pieces.

46. Finally, the packaging could be reduced and still accommodate the required food labeling. In fact, Defendant manufactures and sells Junior Mints candy in a significantly smaller container than the Products, and yet the smaller container successfully accommodates the required food labeling.

**The Products' Packaging Is Misleading**

47. Plaintiff relied on the Products' packaging as a representation of the quantity of candy contained in the packaging. Accordingly, Plaintiff was misled and deceived because she believed she was purchasing more Product than was actually received.

48. Similarly, the Products' packaging was a material factor in Plaintiff's and Class Members' decision to purchase the Products. Reasonable consumers, such as Plaintiff and Class Members, attached importance to the size of the box as a representation of the quantity of candy they believed they were purchasing.

49. Had Plaintiff known Defendant's packaging contained substantial slack-fill, she would not have purchased the Product, or would have purchased it on different terms.

50. Plaintiff would, however, likely purchase the Products in the future if the Products complied with the applicable laws.

## **CLASS ALLEGATIONS**

51. Plaintiff hereby re-alleges and incorporates the foregoing allegations as if set forth herein in their entirety.

52. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others similarly situated, and as a member of the Class and Subclass defined as follows (collectively, the "Classes"):

> All citizens of the United States, excluding citizens of Missouri, who, within the relevant statute of limitations period, purchased Defendant's Products ("Nationwide Class"); and
>
> All citizens of Illinois who, within three years prior to the filing of the Complaint, purchased Defendant's Products ("Illinois Subclass").

53. Excluded from the Classes are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to

such judicial officer.

54. Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

55. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

56. **Numerosity**: Members of the Classes are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of hundreds of thousands of purchasers dispersed throughout the United States, and the Subclass likewise consists of tens of thousands of purchasers throughout the State of Illinois. Accordingly, it would be impracticable to join all members of the Nationwide Class and Illinois Subclass before the Court.

57. **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Classes that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether the Products' containers or packaging were made, formed, or filled as to be misleading;
- Whether the Products contained non-functional slack-fill;
- Whether Defendant labeled, packaged, marketed, advertised and/or sold the Products to Plaintiff and Class Members, using false, misleading and/or deceptive packaging;
- Whether Defendant misrepresented material facts in connection with the packaging, marketing, advertising, and/or sale of the Products;
- Whether Defendant violated the ICFA by selling the Products with false,

- misleading, and deceptive packaging;

- Whether Plaintiff and the Classes are entitled to equitable and/or injunctive relief;

- Whether Plaintiff and the Class Members have sustained damages as a result of Defendant's unlawful conduct;

- The proper measure of damages sustained by Plaintiff and Class Members; and

- Whether Defendant was unjustly enriched by its misleading and deceptive practices.

58. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes she seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misbranded Product. Defendant's unlawful, unfair and/or fraudulent conduct concerns the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Classes sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

59. **Adequacy:** Plaintiff is an adequate representative of the Classes she seeks to represent because her interests do not conflict with the interests of the members of the Classes Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of members of the Classes and she has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer-protection litigation.

60. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable and no other group method of adjudication of all claims asserted

herein is more efficient and manageable for at least the following reasons:

    a.    The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

    b.    Absent a Class, the members of the Classes will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

    c.    Given the size of individual Class Members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

    d.    When the liability of Defendant has been adjudicated, claims of all members of the Classes can be administered efficiently and/or determined uniformly by the Court; and

    e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Classes can seek redress for the harm caused to them by Defendant.

61. Because Plaintiff seeks relief for all members of the Classes, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant.

62. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

63. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy.

64. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**CLAIMS FOR RELIEF**

**COUNT I**
**Violation of the Illinois Consumer Fraud and**
**Deceptive Practices Act, 815 ILCS 505/1, *et seq.***
**(On Behalf of the Illinois Class)**

65. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

66. The purpose of the Illinois Consumer Fraud and Deceptive Practices Act is to protect consumers against fraud and unfair and deceptive acts in the conduct of commerce.

67. To make a *prima facie* claim for violation of the ICFA, Plaintiff must show the following, in pertinent part:

   a. Defendant made statements or other representations that were either false or misleading, or fraudulent, or false promises, or misrepresentations, or the concealment, suppression or omission of material facts ("false or misleading representations");

   b. Defendant's false or misleading representations were made with the intent that consumers would rely upon the deception;

   c. Defendant's false or misleading representations were made in the course of trade or commerce;

   d. Defendant's false or misleading representations resulted in actual damage to Plaintiff; and

   e. Plaintiff's actual damage was proximately caused by Defendant's false or misleading representations.

68. Defendant made false and/or misleading representations and/or omissions by uniformly packaging the Products with a substantial amount of non-functional slack-fill.

15

69. Further, Defendant intended that consumers, such as Plaintiff and Class Members, would rely on its false representations and omissions. Defendant was aware that consumers attach importance to the packaging of the Products, and Defendant sought to take advantage of that fact by packaging the Products in oversized, opaque containers with substantial non-functional slack-fill.

70. Defendant's packaging of the Products in oversized, opaque containers was misleading to reasonable consumers, such as Plaintiff and Class Members. Plaintiff and Class Members were injured because they received less candy than was represented by the Product packaging.

71. Plaintiff and Class Members suffered economic damages as a proximate result of Defendant's unlawful conduct as alleged herein, including the difference between the actual value of the Products received, and the value of the Products if they had been as represented.

## COUNT II
## Unjust Enrichment
### (On Behalf of the Classes)

72. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

73. By purchasing the Products, Plaintiff and members of the Classes conferred a benefit on Defendant in the form of the purchase price of the slack-filled Products.

74. Defendant had knowledge of such benefits.

75. Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

76. Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions.

77. Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the Plaintiff's and members of the Classes' expense, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated persons, seeks judgment against Defendant, as follows:

   a. For an order certifying the Nationwide Class and the Illinois Consumer Subclass, under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of all Classes; and naming Plaintiff's attorneys as Class Counsel to represent all Classes.

   b. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

   c. For an order finding in favor of Plaintiff, and all Classes, on all counts asserted herein;

   d. For an order awarding all compensatory damages, in an amount to be determined by the Court and/or jury.

   e. For prejudgment interest on all amounts awarded;

   f. For interest on the amount of any and all economic losses, at the prevailing legal rate;

   g. For an order of restitution and all other forms of equitable monetary relief;

h. For injunctive relief as pleaded or as the Court may deem proper;

i. For an order awarding Plaintiff and all Classes their reasonable attorneys' fees, expenses and costs of suit; and

j. For all such other and further relief as may be just and proper.

Respectfully submitted,

Paige Stemm, individually and on behalf of all others similarly situated.

Dated: March 29, 2018

By: s/ Michael Aschenbrener
Michael Aschenbrener, (6292306)
masch@kamberlaw.com
Adam York (6294143)
ayork@kamberlaw.com
KamberLaw LLC
220 N Green St
Chicago, IL 60607
Telephone:(212) 920-3072
Facsimile: (212) 202-6364