IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAIGE STEMM, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) 18 C 2289 ) |
| TOOTSIE ROLL INDUSTRIES, INC., | ) Judge John Z. Lee ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paige Stemm filed this suit on behalf of herself and a putative class, alleging that Defendant Tootsie Roll Industries, Inc. ("Tootsie Roll") packaged and sold its Junior Mints candy product in opaque boxes that hid the large amount of empty space contained in them. Stemm believes that this practice violates the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq*. Stemm also brings a class action claim for unjust enrichment. Tootsie Roll has moved to dismiss Stemm's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and to strike Stemm's class claims for unjust enrichment under Rule 12(f). For the reasons set forth herein, Tootsie Roll's motion to dismiss is granted in part and stricken without prejudice in part, and its motion to strike is denied as moot..

### Factual Background[1]

Stemm bought a box of Junior Mints (the "Product") from a Walgreens store in Belleville, Illinois for approximately one dollar in March 2018. Compl. ¶ 6, ECF No. 1. The Product was packaged in an opaque, cardboard box, and Stemm could not see its contents. *Id.* ¶¶ 19, 21–22.

---

[1] The following facts are taken from Stemm's amended complaint, and are credited as true on review of Tootsie Roll's motion to dismiss. *See Tobey v. Chibucos*, 890 F.3d 634, 741 (7th Cir. 2018).

Images of the front and back of the box are shown below:

Compl. ¶ 21; Def's Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 2, ECF No. 17.[2]

When Stemm opened the box, she saw that only about 56% of the container was filled with candy. Compl. ¶¶ 3, 22. Defendant uniformly packages the Product in this manner. *Id.* ¶¶ 19, 21–23. An image of the front of the Product, with packaging cut out to expose the alleged empty space in the container ("slack-fill"), is shown below:



*Id.* ¶ 23.

---

[2] Because Stemm has provided an image of the front of the Product's container, the Court will consider the image of the back of the same container attached to Tootsie Roll's motion, the accuracy of which Stemm does not contest. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim.") (internal quotation marks omitted).

According to Stemm, the size of the Product's packaging misled her and other members of the class to believe they were purchasing more of the Product than they actually received. *Id.* ¶¶ 47–49, 58, 70. Stemm further alleges that the empty space within the Product's packaging (commonly referred to as the "slack-fill") is non-functional, because it does not protect the candies, is not required for enclosing the candies, did not substantially result from product settling into the box, and fails to meet federal requirements regulating non-functional slack-fill. *Id.* ¶¶ 25, 29, 34–36, 38–41, 43–46; *see* 21 C.F.R. § 100.100.

## **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Moreover, allegations of fraud must also satisfy the pleading standards specified in Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (applying Rule 9(b) to an ICFA claim when plaintiff alleged that defendant "unlawfully and

intentionally concealed" information); *Nieto v. Perdue Farms, Inc.*, No. 08 C 7399, 2010 WL 1031691, at *5 (N.D. Ill. Mar. 17, 2010) (applying Rule 9(b) where "unjust enrichment claim sounds in fraud"). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The "circumstances constituting fraud" include the identity of the person who committed the fraud, the time, place, and content of the fraud, and the method by which the fraud was communicated to the plaintiff. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). This is also known as the "who, what, when, where, and how" standard. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). This requirement ensures that a defendant has fair notice of a plaintiff's claims and grounds, providing the defendant an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill. 1990).

## Analysis

I. **ICFA (Count I)**

    A. **Consumer Deception**

To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive act or practice by [the defendant]; (2) that the act or practice occurred in [a] course of conduct involving trade or commerce; (3) that [the defendant] intended [the plaintiff] to rely on the deception; and (4) that actual damages were proximately caused by the deception." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005)). Whether an act is deceptive must be evaluated "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) (citing *Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8 (Ill. App. Ct. 1997)); *accord Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014).

A deceptive act or practice under the ICFA is one that "creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Courts apply a "reasonable consumer" standard in evaluating the likelihood of deception. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015) (finding that whether "statements would have misled a reasonable consumer" is a common question suitable for class treatment); *see also Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 925–27 (2007) (explaining that puffery is not deceptive because "no reasonable consumer would rely on such an implicit assertion as the sole basis for making a purchase").

"[A] court may dismiss an ICFA claim at the pleading stage if the statement is 'not misleading as a matter of law.'" *Fuchs v. Menard, Inc.*, No. 17-CV-01752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) (quoting *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015)), *appeal filed*. A statement or label cannot mislead unless it actually conveys untrue information about a product. *See, e.g., Bober*, 246 F.3d at 938 (statements claiming that drugs were different medications were not deceptive because "that claim [was] completely true"); *Fuchs*, 2017 WL 4339821, at *3 (labels stating lumber dimensions were not misleading because they were "literally true" and complied with labeling standards set forth by the National Institute of Standards and Technology); *Galanis v. Starbucks Corp.*, No. 16 C 4705, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (product advertised as an "iced" drink was not deceptive because "a reasonable consumer who purchases an 'iced' drink, expects there to be ice in the drink"); *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *2 (N.D. Ill. June 16, 2015) (the wording "Whey Protein Powder," displayed alongside the clearly visible and prominently placed phrases "Naturally & Artificially Flavored Drink Mix" and "high-quality protein," was not deceptive because it was "clear to any consumer upon first glance that the Product is not *pure* whey protein").

5

By contrast, when the necessary factual determinations "cannot be made based on pleadings and isolated pictures of certain products on shelves," a Rule 12(b)(6) motion to dismiss an ICFA claim will be denied. *Grabowski v. Dunkin' Brands, Inc.*, No. 17 C 5069, 2017 WL 6059966, at *2 (N.D. Ill. Dec. 7, 2017) (explaining that "the proximity of [the defendant's] products with real blueberries to those with fake blueberries could possibly be relevant" to an ICFA claim for selling "blueberry" products that lacked actual blueberries); *see Korte v. Pinnacle Foods Grp., LLC.*, No. 17-CV-199-SMY-SCW, 2018 WL 1508855, at *4 (S.D. Ill. Mar. 27, 2018) ("[W]hether listing other ingredients on the back would be sufficient to dispel any misunderstanding the name and description on the front of the package might cause is a question of fact."); *Burton v. Hodgson Mill, Inc.*, No. 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *6 (S.D. Ill. Apr. 6, 2017) (finding that whether a pancake mix labeled "all natural" but including synthetic ingredients could mislead a reasonable consumer was "an intricate question of fact"); *see also Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1083 (N.D. Ill. 2018) (declining to dismiss ICFA complaint where defendant sold pita chips on the internet falsely labeled as "All Natural," because "the ingredients were arguably much more difficult to ascertain").

Tootsie Roll argues that Stemm fails to plausibly allege consumer deception because it is unreasonable to infer that the size of the Junior Mints box would deceive a reasonable consumer. More to the point, Tootsie Roll contends that the information on the outside of the box that discloses the net weight and number of pieces inside the box eliminate any possibility of deception.

But the Court cannot conclude that these disclosures, in and of themselves, render the Product "not misleading as a matter of law." *Fuchs*, 2017 WL 4339821, at *3. *Cf.* Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993) ("[T]he presence of an accurate net weight statement does not eliminate the misbranding that occurs when

a container is made, formed, or filled so as to be misleading."). Even if the information on the boxes dispels any confusion about the Product's *weight* or the *number* of candy pieces inside them, the overall size of the boxes may mislead a reasonable consumer into believing that each piece is much larger than it actually is. *See, e.g., White v. Just Born, Inc.*, No. 2:17-CV-04025-C-NKL, 2017 WL 3130333, at *4 (W.D. Mo. July 21, 2017) (denying a motion to dismiss because "[Defendant's] candy boxes are opaque and non-pliable, and a reasonable consumer could conclude that the size of a box suggests the amount of candy in it"). And Stemm's assertion that she and others attach importance to the Product's packaging at least suggests that a "reasonable consumer" does so as well. Compl. ¶¶ 47–49. Such allegations are sufficient to state a plausible claim, at least at the pleading stage. *See Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely.") (internal quotation marks omitted). These allegations also are sufficiently particular under Rule 9(b) to provide Tootsie Roll with fair notice of Stemm's claims. *See Reshal*, 754 F. Supp. at 1230.

For its part, Tootsie Roll relies substantially on *Daniel v. Mondelez International, Inc.*, 287 F. Supp. 3d 177 (E.D.N.Y. 2018), a case from the Eastern District of New York. There are a number of reasons, however, to question the persuasive value of *Daniel*, as well as its applicability here. First, recognizing the divergence of authority in this area, the court in *Daniel* starts by declining to follow another district court case, *Izquierdo v. Mondelez Int'l Inc.*, No. 16-cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016), which "decline[d] to adopt [defendant's] theory that a manufacturer of a deceptively packaged product is immune from suit so long as the package accurately lists the product's net weight and quantity." 287 F. Supp. 3d at 192 (quoting *Izquierdo*, 2016 WL 6459832 at *7). The *Daniel* court then took pains to point out that, rather than relying solely on the size of the packaging upon which to base her fraud claim, Daniel alleged that she

7

was deceived in a number of other ways, including by the labels and product advertisements. *Id.* From this, the court held that, "absent exceptional circumstances, a reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size, and number of servings to offset any misrepresentations arising from non-functional slack-fill." *Id.* However, the court did not elucidate what "exceptional circumstances" might warrant a different result. *See id.* at 192–93.

In contrast to the plaintiff in *Daniel*, Stemm relies entirely on the size of the boxes for her claims. Compl. ¶¶ 47–49. What is more, Stemm alleges that 44% of the packaging is slack-fill, a rather substantial amount by any measure. *Id.* ¶ 3. Whether the *Daniel* court would have found "exceptional circumstances" to exist in this case is unclear. But, taking the allegations here to be true and making all reasonable inferences in Plaintiff's favor, the Court cannot conclude that the information on the boxes, in and of itself, precludes Stemm's claims as a matter of law.

### B. Federal Slack-Fill Regulations and the ICFA

The parties also dispute whether a violation of federal regulations governing slack-fill, which were promulgated under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, constitutes a *per se* violation of the ICFA. *See* Compl. ¶¶ 13–46 (citing 21 C.F.R. § 100.100). It does not.[3]

ICFA provides a list of 31 statutes that, if violated, would constitute a *per se* violation of the ICFA. *See* 815 Ill. Comp. Stat. 505/2Z. The FDCA is not one of those statutes. Adhering to the canon of statutory construction, "*expressio unios est exclusio alterius*," the Court concludes that a violation of the FDCA regulation is not a *per se* violation of the ICFA, because it is not one

---

[3] Stemm cannot bring a claim directly under the FDCA, because the act does not contemplate a private cause of action. *See Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 487 (1996)).

of the statutes enumerated therein. *See, e.g., McCabe v. Crawford & Co.*, 210 F.R.D. 631, 640 (N.D. Ill. 2002) ("If the Illinois legislature intended that violations of § 6–305.2(f) [of the Illinois Vehicle Code] constitute unlawful practices under the ICFA, they would have explicitly provided so in the 2002 amendments."); *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 604 (Ill. App. Ct. 2009) (explaining that violating the Medical Practice Act does not automatically violate the ICFA because the Act is not enumerated, and "[w]hen certain things are enumerated in a statute, that enumeration implies the exclusion of all other things even if there are no negative words of prohibition"); *People ex rel. Daley v. Grady*, 548 N.E.2d 764, 766 (Ill. App. Ct. 1989) (stating that a violation of the Illinois Real Estate License Act did not automatically qualify as a deceptive practice under the ICFA because it was not a statute enumerated in the ICFA).

Tootsie Roll also argues Stemm has failed to sufficiently plead that Tootsie Roll violated 21 C.F.R. § 100.100 in the first place. Presumably, Tootsie Roll is making this argument to support a defense of federal preemption. But, preemption is an affirmative defense on which Tootsie Roll—not Stemm—bears the burden of proof. *See Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof."). Furthermore, because it is an affirmative defense, the issue of preemption is more appropriately addressed by means of a Rule 12(c) motion for judgment on the pleadings, rather than a Rule 12(b)(6) motion to dismiss. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). Accordingly, the Court will not evaluate Tootsie Roll's contention at this stage of the proceedings.

C. **Actual Damages**

Tootsie Roll next argues that Stemm fails to plead actual damages.[4] "[A]ctual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197–98 (Ill. App. Ct. 2008)).

In *Kim*, plaintiffs purchased clothing from retail outlets that advertised their products as being discounted from "Suggested Prices." *Kim*, 598 F.3d at 363. These "Suggested Prices" were fictitious and substantially higher than the actual prices consumers typically paid. *Id.* at 364. Nevertheless, the court held that plaintiffs "got the benefit of their bargain." *Id.* at 366. Without alleging that the clothing products were "defective or worth less than what they actually paid . . . [or that] they could have shopped around and obtained a better price in the marketplace," the Seventh Circuit held that plaintiffs suffered no actual harm. *Id.* at 365–66; *see Camasta v. Omaha Steaks Int'l, Inc.*, No. 12-cv-08285, 2013 WL 4495661, at *11 (N.D. Ill. Aug. 21, 2013) (explaining that where plaintiff did not allege that the steaks he bought were worth less than he paid, he "is left only with allegations that suggest he was harmed because he did not receive as much of a discount as expected").

Likewise, Stemm has not alleged that the candy that she received was defective or worth less than the dollar she paid for it. Instead, she claims that she expected to receive more candy than she did. *See* Compl. ¶¶ 70–71 (alleging that Stemm "received less candy than was represented by the Product packaging . . . [and] suffered economic damages . . . including the difference between the actual value of the Products received, and the value of the Products if they had been

---

[4] Tootsie Roll submits that Stemm cannot plead damages because she does not plausibly allege deception. *See* Def.'s Mem. at 8. Because the Court has concluded that Stemm has plausibly alleged deception, this argument fails.

10

as represented." But Stemm does not allege that the candy that she did receive was defective in some way, or that she would have paid less in the marketplace for comparable products, but for the purported deception. *See Kim*, 598 F.3d at 365. That she expected to receive something more than what she got, in and of itself, does not constitute actual damages. *See Omaha Steaks*, 2013 WL 4495661, at *11.

Furthermore, Stemm cannot save her ICFA claim by alleging that she would not have bought the Product had she known about the slack-fill. Whether or not the Product's packaging *caused* Stemm to buy the Product, she does not assert that she paid more than the actual value of the candy itself. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, No. 12 C 7782, 2013 WL 3866507, at *4 (N.D. Ill. July 25, 2013), *aff'd*, 761 F.3d 732, 739–40 (7th Cir. 2014) (plaintiff who "would not have bought the shirts" absent deceptive advertising did not suffer actual damages without alleging that he "paid more than the actual value for the shirts"). For example, it might be one thing for Stemm to allege that the oversized box deceived her into thinking that the individual candy pieces were bigger than they were and that the price that she paid was the fair market value of the larger pieces, and not the smaller pieces that she actually got (assuming, of course, a good faith basis for such a claim). But she does not do this. *See, e.g., Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 WL 3895565, at *5 (N.D. Ill. Sept. 6, 2017) (plaintiff "would not have bought Lifeway's [kefir] product had he known it was not in fact 99% lactose-free"); *McDonnell v. Nature's Way Prod.*, LLC, No. 16 C 5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (plaintiff "would not have purchased the vitamins at the price she paid if she had known that they contained foreign-sourced vitamins"); *Biffar v. Pinnacle Foods Grp., LLC*, No. 16-0873-DRH, 2016 WL 7429130, at *4 (S.D. Ill. Dec. 22, 2016) (plaintiff "would not have purchased [the muffin mix] or would have paid less for it had she known it contained synthetic ingredients"); *Jamison v.*

11

*Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911–12 (N.D. Ill. 2011) (plaintiffs would not have purchased video monitors had they known that they were not encrypted, thereby placing consumers "at serious risk from both a safety and privacy standpoint"). Because Stemm has not plausibly alleged actual damages under the ICFA, the Court dismisses Count I without prejudice.

## II.     Unjust Enrichment (Count II)

As a final matter, Tootsie Roll moves to dismiss Stemm's unjust enrichment claim, arguing it falls with Stemm's ICFA claim. In support, Tootsie Roll cites *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

In *Cleary*, the Seventh Circuit stated that where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." Stemm does not challenge Tootsie Roll's argument, and, instead, asserts that her unjust enrichment claim survives because her ICFA claim survives. *See* Pl.'s Resp. at 13, ECF No. 35. Because Stemm does not dispute that her ICFA claim and unjust enrichment claim rise and fall together, the Court dismisses Count II without prejudice. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

## <u>Conclusion</u>

For the reasons stated in this Memorandum Opinion and Order, the Court grants Tootsie Roll's motion to dismiss, and the complaint is dismissed without prejudice. To the extent that Tootsie Roll's motion also challenged Plaintiff Stemm's ability to seek injunctive relief and the putative class's claim for unjust enrichment, the motion is stricken without prejudice, and Defendant may reassert those arguments in the event that Plaintiff is able to cure the deficiencies outlined herein consistent with Plaintiff's and counsel's obligations under Rule 11. The Court

grants Plaintiff fifteen days in which to file an amended complaint. If Plaintiff fails to file an amended complaint within that time frame, the Court will assume that Plaintiff no longer wishes to pursue this litigation and will terminate this case.

**IT IS SO ORDERED.**          ENTERED   3/19/19

*[signature: John Z. Lee]*

**John Z. Lee**
**United States District Judge**